NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAWN H. ADAMS<br><br>     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Civ. No. 05-1516 (WGB)<br><br>**M E M O R A N D U M**<br>**O P I N I O N** |

APPEARANCES:

LANGTON & ALTER
Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
By:  Vernon Norwood
     Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
Newark, NJ 07105

    Attorney for Defendant

BASSLER, SENIOR DISTRICT JUDGE:

    Plaintiff, Shawn H. Adams ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"). Plaintiff seeks review of the final determination of

1

the Commissioner of Social Security ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB").  Plaintiff requests that the Court reverse, or in the alternative, remand the Commissioner's decision for reconsideration.  For the reasons set forth below, the Commissioner's decision is affirmed.

**I.    BACKGROUND**

**A.    Factual and Procedural History**

Plaintiff is a forty-five year old individual, who has a high school education and has completed one or two years of college.  Plaintiff has past relevant work experience as a corrections officer, secretary, and telemarketer.  (R. at 14).[1]  On May 10, 2002, she applied for Disability Insurance benefits alleging that she has been unable to work as of March 20, 2002 due to diabetes mellitus, poor vision, leg numbness, fainting spells, and chest pain.  (R. at 15).  Plaintiff met the disability insured status requirements of the Act through September 30, 2003 and was required to establish disability on or prior to that date to receive Social Security disability benefits.  Plaintiff's application was denied initially and on reconsideration.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 13, 2004 before ALJ Dean W. Determan.  On May 24, 2004, the ALJ issued a decision denying Plaintiff's request for benefits.  On

---

[1] References to "R." are to the Record.

2

January 14, 2005, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.  Plaintiff timely filed this action.

**B.    The ALJ's Decision**

To determine a claimant's eligibility for disability benefits, the Commissioner applies the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  First, a claimant must not be engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment that significantly limits her ability to work.  20 C.F.R. § 404.1520(c).  At the third step, the ALJ compares the claimant's injury to the Listing of Impairments in 20 C.F.R. § 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(d).  If the claimant does not suffer from an impairment listed in the Appendix or its equivalent, then the analysis proceeds to step four.  20 C.F.R. § 404.1520(e).

In step four, the ALJ must determine whether a claimant's residual functional capacity ("RFC") enables her to perform her past relevant work.  20 C.F.R. § 404.1520(e).  This step involves three sub-parts.  First, the ALJ must make specific findings of fact as to the claimant's RFC, which is "the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a).  The RFC is measured by evaluating all relevant medical and other evidence, and the ALJ must consider even those impairments which

are not severe.  20 C.F.R. § 404.1520(e).  Next, the ALJ must make findings of the claimant's ability to meet the physical, mental, sensory and other requirements of work.  Id.  Finally, the ALJ must compare the RFC to the past relevant work to determine whether the claimant has the level of capability needed to perform the past relevant work.  20 C.F.R. § 404.1561; S.S.R. 82-62.  If the claimant can return to her past relevant work, then the ALJ will find her not disabled.  Otherwise, the ALJ must proceed to step five.  20 C.F.R. § 404.1520(f).  This final step requires the ALJ to consider the claimant's RFC, age, education and work experience to determine if there is other work which exists in significant numbers in the national economy that the claimant could perform.  20 C.F.R. § 404. 1520(g).  In steps one through four, the burden of proof is on the claimant, while in step five, the burden shifts to the Commissioner to prove the claimant is capable of performing other work.  20 C.F.R. § 416.920; see also Flecha v. Shalala, 872 F. Supp. 1312, 1315 (D.N.J. 1994).

In applying the sequential evaluation analysis, ALJ Determan first determined that Plaintiff had not engaged in any "substantial gainful activity since the alleged onset of disability" on March 20, 2002.  (R. at 18).  Secondly, ALJ Determan found that Plaintiff's diabetes mellitus constituted a "severe impairment" under 20 C.F.R. § 404. 1520(c), but her other

4

alleged impairments did not.  The ALJ noted that "[medical] evidence [did] not substantiate [Plaintiff's] allegations of a severe visual impairment or of any medically determinable impairment that results in fainting."  (R. at 16).  At step three, the ALJ determined that Plaintiff's diabetes impairment was not "'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1."  (R. at 16).  Thus, a determination of per se disability at step three was not merited.  The analysis proceeded to step four, where the ALJ found that the Plaintiff had the RFC for medium work.  Based on Plaintiff's description of her job duties as a corrections officer and the classification in the Dictionary of Occupational Titles ("DOT"), the occupation of a corrections officer is a medium exertion level job.  ALJ Determan then concluded that Plaintiff can return to her past relevant work, and that she "was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision."  (R. at 19).

## II.  STANDARD OF REVIEW

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  The Court is limited in its review to determining whether the Commissioner's decision is supported by "substantial evidence."  42 U.S.C. § 405(g); see also Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v.

Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  Stated differently, substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Upon reviewing the Commissioner's decision, the Court may affirm, modify, or reverse the decision with or without remanding for a rehearing.  42 U.S.C. § 405 (g).  The Court may not, however, conduct a de novo review or substitute its conclusion for that of the Commissioner fact-finder.  Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the record could support a different conclusion.  Id.; Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995).

In considering whether there is substantial evidence to support the Commissioner's decision, the Court must examine: "(1) objective medical facts; (2) diagnoses and expert opinions of treating and examining physicians; (3) subjective evidence of pain; and (4) the claimant's educational background, work history and age." Snee v. Sec'y of Health and Human Servs., 660 F. Supp. 736, 738 (D.N.J. 1987) (citation omitted).  Where such evidence exists, "it is of no consequence that the record contains

evidence which may also support a different conclusion." <u>Pearson v. Barnhart</u>, 380 F. Supp. 2d 496, 503 (D.N.J. 2005).

## III. **DISCUSSION**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence and that substantial evidence exists to support a finding of disability.  Plaintiff alleges that the ALJ made three erroneous findings: 1)at step two, the ALJ's finding that Plaintiff's visual impairments do not constitute severe impairments was not supported by substantial evidence; 2)the ALJ gave no evidentiary basis for his finding that Plaintiff can perform medium work activity; and 3)at step four, the ALJ did not compare RFC and past relevant work on a "task-by-task" basis, as required by the Commissioner's Rulings.

The Court finds that the ALJ properly rejected Plaintiff's claim of a severe visual impairment because it was not supported by objective medical evidence.  Also, the ALJ appropriately relied on Disability Determination Services' assessment of Plaintiff's RFC.  Lastly, the ALJ sufficiently analyzed Plaintiff's RFC and the demands of employment as a correction officer, finding that she is capable of performing medium level work with "lifting up to fifty pounds occasionally and standing and or walking at least six hours out of an eight-hour workday."  (R. at 18).  Because there is substantial evidence to support the ALJ's denial of disability benefits, this Court affirms.

### A. The ALJ Appropriately Found That Plaintiff's Visual Impairment Was A Non-Severe Impairment

Upon finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, ALJ Determan properly proceeded to step two of the analysis. At step two, the ALJ found that Plaintiff's diabetes mellitus is a severe impairment within the meaning of 20 C.F.R. § 404.1520(c) since "it resulted in significant limitations in her ability to perform work related activities." Plaintiff does not dispute this finding. Plaintiff argues, however, that the ALJ erred in finding that her poor vision and fainting spells are not severe impairments. Plaintiff correctly points out that "[t]he burden placed on an applicant at step two is not an exacting one" and "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." McCrea v. Commissioner, 370 F.3d 357 (3d Cir. 2003); Brief in Support of Plaintiff ("Pl. Br.") at 22.

The Court of Appeals for the Third Circuit in Newell v. Commissioner described step two of the ALJ's analysis as "a de minimus screening device to dispose of groundless claims." 347 F.3d 541, 546 (3d Cir. 2003). Nevertheless, "evidence of a 'physical or mental impairment' must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Claussen v. Chater, 950 F. Supp. 1287, 1293 (D.N.J. 1996)

8

(quoting 42 U.S.C. § 423 (d)(3)).

    Commissioner maintains, however, that Plaintiff's allegations of a severe visual impairment are not supported by medical evidence.  First, Dr. Nkwonta, an internist, examined the Plaintiff on July 31, 2002 and diagnosed poor visual acuity with 20/200 vision in both eyes.  To determine whether there was a visual disability, the Social Security Administration requested two more visual examinations of the Plaintiff.  At the first visual examination on August 13, 2002, Dr. Materna, a consultative physician, observed that even though Plaintiff's "best corrected visual acuity was hand motion O.D. and hand motion O.S., [Dr. Materna] could not account for this as the [Plaintiff] ambulated about the office in a reasonable fashion."  (R. at 167).  The doctor observed no evidence of diabetic retinopathy or vitreous hemorrhage.  (R. at 168).  Furthermore, Dr. Materna stated that there was a "strong possibility of malingering."  (R. at 168).  At the second visual examination on March 15, 2004, Dr. Materna again noted that Plaintiff had no apparent difficulty ambulating around the office, but recommended further evaluation at the University of Medicine and Dentistry of New Jersey ("UMDNJ").  Dr. Materna stated, "I think a strong possibility of malingering should be considered here, but further investigation is warranted."  (R. at 192).  Also, Commissioner points out that "none of [P]laintiff's treating nor examining

physicians found any impairment that would result in fainting spells." Defendant's Brief ("Def. Br.") at 11.

Because of the lack of supporting medical evidence, ALJ Determan concluded that Plaintiff's subjective complaints of temporary blindness and of chronic blurry vision were not credible. (R. at 16). On review, the ALJ's credibility determinations are entitled to great weight because he had an opportunity to observe the Plaintiff's demeanor during the hearing. Alexander v. Shalala, 927 F. Supp. 785, 796 (D.N.J. 1995) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). The Court will not secondguess his assessment of Plaintiff's credibility and finds that there is substantial evidence to support the ALJ's step two findings.

Upon finding that poor vision and fainting spells are not severe impairments, ALJ Determan did not end the inquiry there. Instead, the ALJ properly proceeded to step three of the evaluation to determine whether Plaintiff's diabetes mellitus, which is a severe impairment, meets or medically equals the criteria in the Listing of Impairments in Appendix 1 and concluded that it does not.

**B.   The ALJ's Determination Of Plaintiff's Residual Functional Capacity Is Supported By Substantial Evidence**

Plaintiff does not dispute that her diabetes mellitus

10

impairment did not meet or medically equal any of the listed impairments in Appendix 1.  Therefore, the ALJ properly proceeded to step four to determine Plaintiff's RFC and concluded that she is capable of performing medium level work.  Plaintiff argues that this finding is unsupported by substantial evidence and that the ALJ failed to comply with the Commissioner's Regulations, which require "specific references to evidence of record in support of assessed limitations."  20 C.F.R. § 404.1545; S.S.R. 85-16; S.S.R. 96-8P.  The Court disagrees with the Plaintiff.

Step four of the disability evaluation requires the ALJ to determine Plaintiff's RFC and whether she can return to her previous work.  RFC and levels of work are classified as sedentary, light, medium, heavy or very heavy based on the physical exertion requirements.  Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  A person who can perform medium work is presumed to be capable of performing sedentary and light work.  Id.

The ALJ's decision that Plaintiff is capable of performing medium work is supported by substantial evidence.  In making his determination, ALJ Determan properly considered medical evidence on record as well as Plaintiff's subjective allegations.  The ALJ acknowledged that while the Plaintiff's severe impairment "causes some functional limitations and prevents her from performing some

11

of the work she used to do," he is "not persuaded that it precludes her from performing work at all, which is the standard for disability under Social Security law."  (R. at 17).  Even though Plaintiff suffers from absent ankle and knee jerks, numbness, and sensory deficits in her left foot and leg, Pl. Br. at 17, Dr. Nkwonta observed that Plaintiff's physical examination was unremarkable.  In particular, Dr. Nkwonta found that Plaintiff was able to "walk normally, walk on her heels and toes and to squat.  Strength was full in all extremities.  Grip strength and finger dexterity were also normal."  (R. at 17).  Moreover, Plaintiff has "[f]ull range of motion in the shoulders, elbows, forearms, and wrists bilaterally. . . . Full range of motion of the hips, knees, and ankles bilaterally.  Strength is 5/5 bilaterally in the lower extremities."  (R. at 162).

In addition, Disability Determination Services ("DDS") determined that the Plaintiff is capable of medium work activity with no non-exertional limitations.  (R. at 18).  According to the DDS Report, Plaintiff can occasionally lift up to fifty pounds, frequently lift up to twenty-five pounds, stand or walk for a total of about six hours in an eight hour work day, and sit for a total of about six hours in an eight hour workday.  No manipulative, visual, communicative, or environmental limitations were found.  The DDS Report also stated that "[Plaintiff's] allegations of functional limitations are not entirely credible."

(R. at 180).

While Plaintiff stresses that the "ALJ must explain which evidence contradicts his finding and which evidence supports his finding and why one set of medical data is found more persuasive than the other," Pl. Br. at 16, there is no evidence on record that shows Plaintiff is incapable of performing medium level work.  Since the burden of proof is on the Plaintiff to prove her RFC, ALJ Determan "could reasonably rely on the lack of evidence that would preclude a range of medium exertional work."  Def. Br. at 13.  Based on the record, the Court concludes that ALJ Determan's decision was supported by substantial evidence.

**C.   The ALJ Properly Compared Plaintiff's RFC and Past Relevant Work and Properly Denied Disability at Step Four**

Plaintiff argues that the ALJ failed to compare Plaintiff's RFC to do medium work with the physical requirements of her past relevant work.  Plaintiff alleges that the ALJ issued a conclusive finding denying disability instead of undertaking a "task-by-task" analysis, and therefore, the case "must be reversed and remanded for a new hearing and a new decision."  Pl. Br. at 14.  The Court finds that the ALJ's decision is supported by substantial evidence and is proper.

Past relevant work is defined as "substantial gainful activity performed within the last fifteen years that lasted long

enough for the individual to learn how to do it." 20 C.F.R. § 404.1565. Social Security ruling 82-62 states that "[e]valuation under sections 404.1520(e) and 416.920(e) of the regulations requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work." SSR 82-62. Pertinent information about the Plaintiff's past work comes from "(1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000); S.S.R. 82-62. The inquiry must be fact specific, but a finding that Plaintiff's RFC meets the physical and mental demands of her past relevant work is a sufficient basis for a finding of "not disabled."  SSR 82-62.

As discussed in the previous section, ALJ Determan found that Plaintiff has the RFC for medium work. Next, the ALJ had to determine the physical exertion level of Plaintiff's past work.

14

From 1979 to 1998, Plaintiff worked as a correction officer in Rahway State Prison, where she "supervised inmates to and from activities[,] to and from jail." (R. at 107). Based on Plaintiff's description of her job, each day she walked for eight hours in an eight hour day, stood for five to eight hours, and sat for zero to two hours. She utilized some machines, tools, or equipment on her job, and prepared written reports. Plaintiff also carried papers and inmates' clothing, frequently lifting less than 10 pounds and rarely lifting as much as 50 pounds. The description of the occupation of correction officer in the Dictionary of Occupational Titles is consistent with Plaintiff's description, and it is classified as medium work. DICOT 372.667-018. Therefore, ALJ's finding that work as a correction officer is medium level work is supported by substantial evidence.

Lastly, ALJ Determan found that Plaintiff is capable of performing each of her responsibilities as a correction officer based on the medical evidence on record. Having found a RFC for medium work, ALJ Determan specified that "[Plaintiff] remains able to walk normally and has no limitations in lifting and using her hands." (R. at 18). Plaintiff contends, however, that her double-vision prevents her from "inspecting," "patrolling," and "guarding," which are her required duties. Nevertheless, the ALJ has specifically discredited Plaintiff's subjective allegations of severe loss of vision as inconsistent with Dr. Materna's

15

diagnosis of her visual examination.  Likewise, contrary to Plaintiff's complaints of having "no reflexes in ankles or knees in both lower extremities," Pl. Br. at 14, ALJ Determan found "only minimal loss of sensation of one foot from diabetes with some reduced reflexes."  (R. at 18).  The ALJ's determination that Plaintiff can perform each of the tasks of a correction officer is supported by medical evidence on record and amounts to a task-by-task analysis of the RFC and past relevant work.  In addition, since medium RFC is consistent with the ability to return to a medium exertion level work as a corrections officer, the Court finds that there is substantial evidence to support the ALJ's finding.  SSR 82-62.

**IV.   CONCLUSION**

For the reasons stated in this Opinion, this Court affirms the Secretary's decision to deny the claimant Disability Insurance Benefits.

An appropriate Order accompanies this Opinion.

Dated: June 26, 2006

                                        /s/ William G. Bassler
_____             William G. Bassler, U.S.S.D.J.

16